IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TFII LEGACY, LLC, | ) |
|         Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 19-1309-CFC-SRF |
| LUMMUS CORPORATION, | ) ) ) |
|         Defendant. | ) |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this breach of contract action is a motion filed by defendant Lummus Corporation ("Lummus") to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (D.I. 6) For the following reasons, the court recommends GRANTING Lummus' motion to dismiss.

### II. BACKGROUND

#### a. Procedural History

On October 12, 2018, Lummus filed an action against TFII Legacy, LLC ("Legacy") in Delaware Court of Chancery, alleging breach of contract (the "original action").[2] (C.A. No. 18-1745, D.I. 1, Ex. A) On November 6, 2018, Legacy removed the original action to this court pursuant to 28 U.S.C. §§ 1441 and 1446. (D.I. 1) On November 13, 2018, Legacy filed a

---

[1] The briefing for the pending motion is as follows: Lummus' opening brief (D.I. 6) and Legacy's answering brief (D.I. 7). Pursuant to D. Del. LR 7.1.2(b), Lummus' reply brief was due on or before August 26, 2019, but no reply brief was filed.

[2] Lummus filed a motion for judgment on the pleadings in a related action, *Lummus Corporation v. TFII Legacy, LLC*, C.A. No. 18-1745-CFC-SRF. (C.A. No. 18-1745, D.I. 32; D.I. 59) The court will address the motion for judgment on the pleadings in a separate Report and Recommendation, as the cases are not consolidated.

motion to dismiss and compel arbitration, which it subsequently withdrew on December 20, 2018. (D.I. 3; D.I. 8) On December 20, 2018, Legacy filed a counterclaim against Lummus. (D.I. 9) On May 1, 2019, Legacy filed an amended counterclaim (the "First Amended Counterclaim"). (D.I. 29) On October 17, 2019, Legacy filed a second amended counterclaim (the "Second Amended Counterclaim"). (D.I. 51) On July 15, 2019, Legacy separately filed this related action, alleging breach of contract. (C.A. No. 19-1309, D.I. 1) On August 5, 2019, Lummus filed the present motion to dismiss. (D.I. 6)

### b. Parties

Lummus is a Delaware corporation with its principal place of business in Georgia. (D.I. 1 at ¶ 2) Legacy is a Delaware limited liability company with its principal place of business in Texas.[3] (*Id.* at ¶ 1)

### c. Facts[4]

On May 21, 2018, Lummus and Legacy entered into a Stock Purchase Agreement (the "SPA"), wherein Legacy agreed to sell all issued and outstanding shares of Carter Control Systems, Inc. ("Carter Control") to Lummus. (*Id.* at ¶¶ 6-7) The SPA was amended on June 7, 2018. (*Id.* at ¶¶ 7-8) The parties agreed that the purchase price would be subject to a post-closing adjustment (the "Post-Closing Adjustment"). (*Id.* at ¶¶ 9, 11)

The SPA outlines procedures for calculating the Post-Closing Adjustment in section 2.04(b), which states:

---

[3] Legacy is the successor-in-interest to Carter Control Systems, L.L.C., a holding company which held all of the issued and outstanding shares of Carter Control Systems, Inc. (C.A. No. 18-1745, D.I. 1, Ex. A at ¶ 3)

[4] The facts in this section are based upon allegations in the complaint, which the court accepts as true for the purposes of the motion for judgment on the pleadings pending in the related suit and the instant motion to dismiss. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

2

(i) Within sixty (60) days after the Closing Date (but in no event earlier than forty-five (45) days after the Closing Date), [Lummus] shall prepare and deliver to [Legacy] a statement setting forth its calculation of Closing Working Capital,[5] which statement shall contain a reviewed balance sheet of [Carter Control] as of the Closing Date (without giving effect to the transactions contemplated herein) and a calculation of Closing Working Capital (the **"Closing Working Capital Statement"**) and a certificate of the Chief Financial Officer of [Lummus] that the Closing Working Capital Statement was prepared in accordance with previous [Carter Control] management practices under GAAP applied using the same accounting methods, practices, principles, policies and procedures that were used in the preparation of the Reviewed Financial Statements.

(ii) The post-closing adjustment shall be an amount equal to the Closing Working Capital minus the Target Working Capital[6] (the **"Post-Closing Adjustment"**). If the Post-Closing Adjustment is a positive number, [Lummus] shall pay to [Legacy] an amount equal to the Post-Closing Adjustment. If the Post-Closing Adjustment is a negative number, [Legacy] shall pay to [Lummus] an amount equal to the Post-Closing Adjustment. The parties agree that Exhibit D sets forth the agreed upon example and calculation methodology for the Post-Closing Adjustment using the Interim Balance Sheet.

(C.A. No. 18-1745, D.I. 33, Ex. A at § 2.04(b)(i)-(ii)) (emphasis in original) The SPA obliged Lummus to use commercially reasonable efforts to collect all Legacy sales taxes that were

---

[5] "Closing Working Capital" is defined by the SPA as:

(a) the Current Assets of [Carter Control], less (b) the Current Liabilities of [Carter Control], determined as of the close of business on the Closing Date; *provided, however,* that for purposes of [Lummus'] calculation of Closing Working Capital to be set forth in the Closing Working Capital Statement and the determination of the Post-Closing Adjustment pursuant to Sections 2.04(b) and 2.04(c), the Uncollected Legacy Sales Tax included in Current Liabilities shall be reduced by the sum of the following: (i) the aggregate Prepaid Legacy Sales Tax that has been paid by [Carter Control] to the appropriate tax authorities prior to Closing pursuant to Section 7.02(u) and (ii) the aggregate portion of the Uncollected Legacy Sales Tax that has been collected before or after the Closing by [Carter Control] or [Lummus] from the Legacy Sales Tax Customers prior to the date that is the earlier of (i) sixty (60) days after the Closing Date or (ii) the date on which [Lummus] delivers the Closing Working Capital Statement to [Legacy] pursuant to Section 2.04(b)(i).

(D.I. 33, Ex. A at art. 1) (emphasis in original)
[6] "Target Working Capital" is defined by the SPA as "$937,333." (D.I. 33, Ex. A at art. 1)

uncollected as of the closing, and to pay all collected sales taxes to Legacy. (C.A. No. 19-1309, D.I. 1 at ¶ 9) Section 5.14 of the SPA states:

> **Post-Closing Collection of Uncollected Legacy Sales Tax.** From the Closing Date through April 30, 2019 (the **"Post-Closing Collection Period"**), [Lummus] shall, and shall cause [Carter Control] to, use commercially reasonable efforts to collect the Uncollected Legacy Sales Tax from the Legacy Sales Tax Customers. If, during the Post-Closing Collection Period, [Lummus] or [Carter Control] collects any portion of the Uncollected Legacy Sales Tax from the Legacy Sales Tax Customers, then the aggregate amount so collected from such customers (such aggregate amount, the **"Recovered Legacy Sales Tax Amount"**) shall be for the benefit of [Legacy]. No later than ten (10) Business Days after the earlier of (i) the date upon which the entire Uncollected Legacy Sales Tax has been collected by [Lummus] or [Carter Control] or (ii) the expiration of the Post-Closing Collection Period, [Lummus] shall pay to [Legacy] an amount equal to the Recovered Legacy Sales Tax Amount (*less* any portion of the Recovered Legacy Sales Tax Amount that was factored into the Closing Working Capital calculation for purposes of determining the Post-Closing Adjustment) by wire transfer of immediately available funds to an account to be designated in writing by [Legacy] to [Lummus] no later than two (2) Business Days prior to the date of payment.

(*Id.*) (emphasis in original) Legacy has demanded that Lummus pay the Recovered Legacy Sales Tax Amount, which Lummus has failed and refused to do. (*Id.* at ¶ 12)

### III. LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs. Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the

4

complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV. DISCUSSION

Lummus argues that Legacy's claim constitutes a compulsory counterclaim under Fed. R. Civ. P. 13(a) and should have been asserted in the original action. (D.I. 6 at 1) Legacy's complaint alleges that Lummus breached the SPA by failing to pay the Recovered Legacy Sales Tax Amount when it was due, which impacted the calculation of the Closing Working Capital. (*Id.* at 5; D.I. 1 at ¶ 14) Lummus asserts that the original action also addresses the calculation of the Closing Working Capital and sum of Post-Closing Adjustment under the SPA, in addition to naming the same parties as this related action. (D.I. 6 at 5-6)

Fed. R. Civ. P. 13, which governs the pleading requirements for compulsory and permissive counterclaims, provides that "[a] pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). A claim will be deemed part of the same transaction or occurrence if it bears a logical relationship to the subject matter of the pleading. *See Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 836 n.9 (3d Cir. 2011). "Such a logical relationship exists where separate trials on each of the claims would involve a substantial duplication of effort and time by the parties and the courts." *Id.* (internal quotation marks omitted). The term "transaction or occurrence" is construed broadly to further the policy objective of Rule 13(a) for promoting judicial economy. *See Transam. Occidental Life Ins. Co. v. Aviation Office of Am. Inc.*, 292 F.3d 384, 389 (3d Cir. 2002).

Legacy admits that the claims arise out of the same transaction and the same agreement. (D.I. 7 at 1) However, it argues that it was impossible to bring its sales tax claims in the original action because the claims at issue accrued ten business days after the collection period expired on April 30, 2019. (D.I. 7 at 1-2) In other words, the claims accrued on May 14, 2019. On May 1, 2019, Legacy filed its First Amended Counterclaim in the original action and did not include the sales tax claims. (C.A. No. 18-1745, D.I. 29) On October 17, 2019, Legacy filed the Second Amended Counterclaim, which similarly did not include the sales tax claims. (D.I. 51) At the time of filing the Second Amended Counterclaim, the sales tax claims could have been brought as a compulsory counterclaim in the original action.

6

However, Legacy argues that the pleadings deadline of May 1, 2019, had long expired in the original action and Lummus has refused to consent to Legacy's amending its counterclaims in the original action to bring these claims.[7] (C.A. No. 19-1309, D.I. 7 at 3; *see also* C.A. No. 18-1745, D.I. 16) Instead of filing a separate action, Legacy could have sought leave to amend from the court at that juncture, pursuant to Fed. R. Civ. P. 15(a)(2), if it could not obtain consent from Lummus. Furthermore, although Legacy argues that it had no way of knowing that Lummus would fail to pay the full Recovered Legacy Sales Tax amount until May 14, 2019, the question of how much Lummus would pay by the end of the period outlined in the SPA is a damages issue, and does not speak to when Legacy could have raised this claim. Therefore, the court recommends granting Lummus' motion to dismiss.

## V. CONCLUSION

For the foregoing reasons, the court recommends granting defendant's motion to dismiss (C.A. No. 19-1309, D.I. 6).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006*); Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

---

[7] The Second Amended Counterclaim was filed with Lummus' written consent, pursuant to Fed. R. Civ. P. 15(a)(2). (C.A. No. 18-1745, D.I. 51 at 1 n.1)

7

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: December 18, 2019

Sherry R. Fallon
United States Magistrate Judge